IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANTHONY JAMAINE MOORE,
    Plaintiff,

vs.                                            Case No: 3:09cv405/RV/EMT

WALTER McNEIL,[1] et al.,
    Defendants.
_____/

## ORDER

    Plaintiff, a non-prisoner proceeding pro se, commenced this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. 1). Plaintiff also filed a Motion to Proceed in Forma Pauperis (Doc. 9). Good cause having been shown, leave to proceed in forma pauperis shall be granted.

    Upon review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to some or all of the named Defendants. The court will therefore allow Plaintiff an opportunity to clarify his allegations in an amended complaint.

    Plaintiff was an inmate at Santa Rosa Correctional Institution (SRCI) at the time of the events giving rise to this action (Doc. 1 at 7).[2] He appears to name four Defendants: Walter McNeil, Secretary of the Florida Department of Corrections; Warden Ellis, the Warden of SRCI; M. Pacheco, a medical doctor at SRCI; and Ms. Nieves, an Associate Registered Nurse Practitioner

---

    [1]Plaintiff misspelled Secretary McNeil's name in the style of his complaint (*see* Doc. 1 at 1). The court will direct the clerk to change the docket to reflect the correct spelling, as the court has already done in the caption of this order.

    [2]The page references used in this Order reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

(ARNP) at SRCI (*see id.* at 1, 2).³ Plaintiff states that on September 28, 2007, he went to the medical department regarding an injury to his back that occurred that morning, and an officer told him to return to his dormitory (*id.* at 7). Plaintiff apparently again sought medical treatment for his back on October 9, 2007 and November 27, 2007, but he never received any treatment or medication (*id.* at 7).

Plaintiff states that on May 21, 2008, he wrote a request to the medical department regarding his "defication [sic] disposition" (*id.*). He submitted a sick call form three days later explaining that he was constipated (*id.*). Plaintiff states he had a sick call visit to the medical department on November 22, 2008 (*id.*). He went to the Reception Medical Center (RMC) in December of 2008, for surgery for a hernia and ulcers (*id.* at 7, 15). While at RMC, Plaintiff caught a virus (*id.* at 7). On April 23, 2009, he went to the SRCI medical department regarding the same abdominal problems he had been experiencing since May of 2008 (*id.*).

Additionally, Plaintiff states he was diagnosed with high blood pressure in May of 2009 (*id.*). Also, on May 21, 2009, Plaintiff declared a medical emergency concerning an asthma attack (*id.* at 8). Plaintiff received breathing treatments for the attack (*id.*).

Plaintiff attributes all of his medical problems, including loss of appetite, bleeding ulcers, bowel problems, asthma attacks, high blood pressure, an "extreme nervous condition," a hernia, mental aguish, and pain and suffering, to harassment, threats, and placement in confinement while he was incarcerated at SRCI (*id.* at 8, 16–17). The remainder of the complaint is a narrative of those events.

Plaintiff states that on April 16, 2009, his locker was searched, and officers found UCC papers (*id.* at 11). The officers confiscated the UCC papers, books, "music notes," Plaintiff's Ethiopian alphabet, and legal materials (*id.*). Plaintiff states the officers failed to issue him a DC6-220 (presumably a receipt for his confiscated property) (*id.*).

Plaintiff additionally states that during the search, the officers discovered a letter from his Aunt Rita Jordan, which they deemed was contraband (*id.*). The officers issued Plaintiff a disciplinary report for possession of contraband (*id.* at 11–12). Plaintiff states it was the

---

³Although Plaintiff listed Ms. Nieves in the style of the case, he did not list her as a Defendant in the "Defendants" section of the complaint form.

responsibility of the mail room supervisor, Ms. Donovan, to screen the letter and retain it if it was contraband, instead of issuing it to him (*id.*). Plaintiff attended a disciplinary hearing on April 23, 2009, where he was found guilty and placed in disciplinary confinement for thirty (30) days (*id.* at 12). Plaintiff states his punishment constituted cruel and unusual punishment, since it was Ms. Donovan's responsibility to screen the mail for contraband (*id.* at 12–14). He also appears to contend that deeming the letter contraband violated his First Amendment rights because it did not create a security risk, it merely concerned an essay contest for Black History Month (*id.* at 13–14).

Plaintiff experienced other problems with the mail room during his incarceration. In December of 2007 and January of 2008, a money order in the amount of $125.00, sent to Plaintiff from his Aunt Rita, disappeared (*id.* at 14). On October 11, 2008, another money order in the amount of $125.00, sent to Plaintiff from Ida Moore, disappeared (*id.*).

On November 10, 2008, Plaintiff was placed in confinement concerning an issue involving his cellmate's property, which was inventoried as belonging to Plaintiff (*id.* at 15). While in confinement, Plaintiff's property was placed in storage, and when he was released, he noticed that various items of his property were missing, and someone had forged his signature on his property receipt (*id.*).

Plaintiff states that during his incarceration at SRCI, he was constantly harassed by officers and medical staff about his religious beliefs and practices.

Plaintiff additionally contends he was denied access to the courts by officers' taking his legal materials while he had cases pending in courts in New York and Florida (*id.* at 17). Plaintiff states the courts were unable to rule on his claims because he could not meet filing deadlines (*id.*).

As relief for the alleged constitutional violations, Plaintiff seeks monetary damages for mental aguish and pain and suffering, as well as "unspecified" damages in the amount of $250,000.00 (*id.* at 18).

Initially, Plaintiff has failed to state a basis for liability as to the named Defendants. With regard to Doctor Pacheco and ARNP Nieves, Plaintiff does not mention any conduct by these Defendants in his factual allegations. If Plaintiff wishes to maintain them as Defendants, he must allege sufficient facts showing their involvement in the alleged constitutional violations.

With regard to Secretary McNeil and Warden Ellis, Plaintiff is advised that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held

liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff does not allege facts showing that Secretary McNeil or Warden Ellis personally participated in any of the alleged constitutional violations, nor do the facts otherwise suggest a causal connection between these Defendants and the alleged constitutional violations. Unless such facts exist and are alleged in an amended complaint, Plaintiff should drop Secretary McNeil and Warden Ellis as Defendants.

Finally, Plaintiff has improperly joined Defendants and claims that are not sufficiently related. Plaintiff is advised that persons cannot be joined in one action as Defendants unless the claims against them arise out of the same transaction, occurrence, or series of transactions or occurrences **and** the claims share a common question of law or fact. *See* Fed. R. Civ. P. 20. In the instant case, it is clear that Plaintiff's claims of denial of access to courts, deprivation of property, religious discrimination, unfounded placement in disciplinary confinement, and denial of adequate medical care are unrelated to each other. That Plaintiff experienced all of these alleged deprivations at SRCI, and the deprivations allegedly caused him mental and physical injury, is an insufficient basis to join them in one action, since the facts underlying each claim are not sufficiently related, and each claim is subject to a different legal standard. Therefore, Plaintiff must separate his claims and address each in a separate civil rights complaint.

In amending his complaint, Plaintiff should carefully review the foregoing to determine whether he wishes to proceed with this action and, if so, the claim he wishes to pursue. If Plaintiff determines he wishes to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "Amended Complaint." Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violation. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Defendants" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in the alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates of the alleged illegal acts. In the section titled "Statement of Claims," Plaintiff must

state what rights or statutes he contends have been violated, and he must provide reference to the facts supporting the claimed violations. Finally, in the "Relief Requested" section, Plaintiff shall identify the form of relief he seeks from this court. Plaintiff is advised that the amended complaint must contain all of his allegations because once an amended complaint is filed, all earlier complaints and filings are disregarded. Local Rule 15.1, Northern District of Florida.

Plaintiff should file the amended complaint with an original signature and keep an identical copy for himself. He should not file a memorandum of law or otherwise provide citations to statutes and cases, and he should not file exhibits as evidentiary support for his complaint. The court will notify Plaintiff when memoranda and exhibits are necessary, such as prior to trial or in conjunction with a motion for summary judgment. Furthermore, Plaintiff should not submit service copies of his complaint unless and until the court directs him to do so. Finally, Plaintiff is advised that discovery is premature at this stage of the case, and Plaintiff should not do any discovery without leave of court.

Accordingly, it is **ORDERED**:

1. Plaintiffs' Motion to Proceed in Forma Pauperis (Doc. 9) is **GRANTED**.

2. The clerk shall change the docket to reflect the correct spelling of Secretary McNeil's name, as reflected in the caption of this order. Additionally, the clerk shall send Plaintiff a form for use in civil rights cases filed by non-prisoners. This case number should be written on the form.

3. Within **THIRTY (30) DAYS** from the date of docketing of this order Plaintiff shall file an amended complaint that complies with this order. Plaintiff should completely fill out a new complaint form, marking it "Amended Complaint."

4. Plaintiff's failure to comply with this order may result in a recommendation that this case be dismissed.

**DONE AND ORDERED** this 28th day of October 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**